United States District Court
Southern District of Texas

**ENTERED**

December 10, 2024

Nathan Ochsner, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| NELSON ESTRADA, individually and on behalf of all other persons similarly situated, | § § § | |
| *Plaintiff*, | § § | |
| VS. | § | CIVIL ACTION NO. 4:23-cv-3407 |
| | § | |
| ARAGON ADVERTISING, LLC and PYTHON LEADS, LLC | § § | |
| | § | |
| *Defendants*. | § § | |

## ORDER

Pending before this Court is Nelson Estrada's ("Plaintiff") Motion to Dismiss Python Leads, LLC's ("Python") Counterclaims. (Doc. No. 32). Python responded in opposition. (Doc. No. 35). Plaintiff did not file a reply, and the time to do so has passed, making the motion ripe for ruling.

Filed jointly with Python's response to the Motion to Dismiss was its Motion to Strike Plaintiff's Motion to Dismiss. (*Id.*). Plaintiff did not file a response, and the time to do so has also passed.

Having considered the motions and the relevant pleadings, the Court **DENIES** the Motion to Strike as moot, (Doc. No. 35), and **DENIES** the Motion to Dismiss, (Doc. No. 32).

### I.     Factual Background

Plaintiff brings this class action on behalf of himself and all others similarly situated against Python and Aragon Advertising, LLC ("Aragon"; collectively, with Python, "Defendants") for allegedly unconsented-to phone and text solicitations in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. (Doc. No. 21). Plaintiff alleges that Aragon purchased leads from lead generators, including Python, to obtain consumer contact and demographic

information. (*Id.* at 9). Using those leads, Plaintiff contends, Defendants facilitated en masse telemarketing with pre-recorded voices, including to those who never consented, had no preexisting or ongoing business relationships, and had placed their numbers on the National Do Not Call Registry. (*Id.*). Specifically, Plaintiff states that he registered his (281) XXX-0020 phone number on the National Do Not Call Registry on or about June 24, 2008. (*Id.* at 10). Yet, he alleges that he received unsolicited, unconsented-to telemarketing calls with pre-recorded voices from Defendants—at least 44 times during a 12-month period. (*Id.*). As such, Plaintiff brings these TCPA claims against them.

Defendants have a different view of the alleged facts. They allege in their counterclaims that Plaintiff or his designee visited https://securemedicareenrollment.com and gave Defendants express consent to call the phone number (281) XXX-0020. (Doc. No. 12 at 15); (Doc. No. 31 at 15). Defendants further allege that Plaintiff, directly or through another person, provided his consent using the false name "Sam Smith" "to prompt [Defendants'] calls to him." (Doc. No. 12 at 16); (Doc. No. 31 at 16). Moreover, Plaintiff allegedly "would pretend to be interested in [Defendants'] products and services, thereby driving up the call count that he would use to extract a higher settlement payout for his manufactured TCPA claim." (Doc. No. 12 at 16); (Doc. No. 31 at 16). Defendants contend that Plaintiff knew before filing this suit that he or someone else on his behalf had opted in to receive phone calls at his number but intentionally failed to opt out. (Doc. No. 12 at 16); (Doc. No. 31 at 16). As a result, Defendants claim they had to expend employee time and resources, and now, attorney's fees and court costs. To recover these alleged damages, Defendants bring counterclaims for common-law fraud and fraud by nondisclosure. (Doc. No. 12 at 17–19); (Doc. No. 31 at 17–19).

## II.    Procedural Background

Initially, Plaintiff only sued Aragon. (Doc. No. 1). Aragon then timely answered and asserted the above-mentioned fraud counterclaims. (Doc. No. 12). After limited discovery, however, Plaintiff joined Python as defendant in his First Amended Class Action Complaint, (Doc. No. 21), filed with leave of court, (Doc. No. 20). Represented by the same counsel as Aragon, Python also timely answered and asserted the same two fraud counterclaims. (Doc. No. 31).

Notably, Aragon did not file an answer to the First Amended Class Action Complaint. Generally, "any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after the service of the amended pleading, whichever is later." FED. R. CIV. P. 15(a)(3). However, "[w]hether Federal Rule[s] of Civil Procedure 15(a)(3) imposes a duty to respond to an amended complaint when a defendant has timely responded to the original complaint is not a settled question." *Reeves v. Wells Fargo Bank, NA*, No. EP-14-CV-187, 2014 WL 12493287, at *3 (W.D. Tex. Dec. 18, 2014). Nevertheless, since the amended complaint changed nothing substantively other than to add Python as defendant, the Court applies Aragon's initial answer to the amended complaint. *Cf.* 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 1476 (3d ed. 1998) ("[D]efendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending . . . . To hold otherwise would be to exalt form over substance."); *Sindhi v. Raina*, 905 F.3d 327, 331 (5th Cir. 2018) ("[W]e have adopted a policy in favor of resolving cases on their merits and against the use of default judgments." (cleaned up)). Another side issue is that, since only Python responded after the amended complaint, Plaintiff moved to dismiss only Python's counterclaims, even though they are

identical to Aragon's counterclaims. Nevertheless, since the Court denies the motion to dismiss, this issue is now moot.

Plaintiff moves to dismiss the counterclaims for three reasons: (1) lack of subject matter jurisdiction; (2) failure to state a claim for which relief can be granted; and (3) the counterclaims violate the Texas Citizens Participation Act. These are taken in turn.

### III.   Legal Standards

#### A.  Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction. *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546 (2005); *People's Nat'l Bank v. Off. of the Comptroller of the Currency of the U.S.*, 362 F.3d 333, 336 (5th Cir. 2004). Without jurisdiction conferred by statute or the Constitution, federal courts lack the power to adjudicate claims. *Exxon Mobil*, 545 U.S. at 552; *People's Nat'l Bank*, 362 F.3d at 336. A party may challenge a district court's subject matter jurisdiction by filing a motion to dismiss pursuant to Rule 12(b)(1). FED. R. CIV. P. 12(b)(1).

A federal court must consider a motion to dismiss pursuant to Rule 12(b)(1) before any other challenge because a court must have subject matter jurisdiction before determining the validity of a claim. *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169 (5th Cir. 1994). The party asserting jurisdiction bears the burden of proof that jurisdiction does in fact exist. *Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001). Where the motion to dismiss is based on the complaint alone, the court must decide whether the allegations in the complaint sufficiently state a basis for subject matter jurisdiction. *Paterson v. Weinberger*, 644 F.2d 521 (5th Cir. 1981).

#### B.  Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

A plaintiff may file a Rule 12(b)(6) motion to dismiss a counterclaim. FED. R. CIV. P. 12(b)(6); *see also Kansas v. Nebraska*, 527 U.S. 1020 (1999). To defeat a motion to dismiss under

4

Rule 12(b)(6), a counterclaim–plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the counterclaim complaint as true and view them in the light most favorable to the counterclaim-plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept factual assumptions or legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

## IV. Analysis

### A. Subject Matter Jurisdiction

Plaintiff argues that the Court lacks federal-question jurisdiction, diversity jurisdiction, and supplemental jurisdiction over Python's counterclaims. Plaintiff is correct that neither federal-question jurisdiction nor diversity jurisdiction exists over Python's counterclaims because it does not allege federal causes of action or any specific amount-in-controversy, let alone one that exceeds

$75,000. Thus, the question becomes whether the Court has supplemental jurisdiction over the counterclaims.

Title 28 U.S.C. § 1367(a) authorizes supplemental jurisdiction as follows:

Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a). The key question is whether Python's counterclaims are so related to Plaintiff's TCPA claims that they "derive from a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

Here, Plaintiff's original claims and Python's counterclaims share a "common nucleus of operative facts," and thus, the Court has supplemental jurisdiction. Plaintiff alleges that Python made or caused to be made numerous telemarketing calls to him in violation of TCPA without his express consent. (Doc. No. 21 at 7–9). Python, on the other hand, alleges that Plaintiff *did* provide his express consent, albeit fraudulently. (Doc. No. 12 at 15); (Doc. No. 31 at 15). The facts underlying those claims—whether Plaintiff did provide the requisite consent—are clearly related and form a common nucleus. Indeed, consent is a valid defense against both of Plaintiff's claims. *See* 47 U.S.C. § 227(b)(1)(B) ("It shall be unlawful . . . to initiate any telephone calls to any residential telephone line using an artificial or prerecorded voice to deliver a message *without the prior express consent of the called party*." (emphasis added)); 47 C.F.R. § 64.1200(c)(2)(ii) ("Any person or entity making telephone solicitations . . . will not be liable for violating this requirement if (ii) *it has obtained the subscriber's prior express invitation or permission*." (emphasis added)). Thus, Plaintiff's claims and Python's counterclaims are so related as to "form part of the same case or controversy." *See* 28 U.S.C. § 1367(a).

6

Plaintiff, however, urges the Court to decline to exercise its supplemental jurisdiction because the § 1367(c) factors weigh in his favor. Section 1367(c) empowers courts to decline otherwise-valid supplemental jurisdiction if (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. § 1367(c).

Specifically, he argues that this case constitutes "exceptional circumstances" in which "there are other compelling reasons for declining jurisdiction." § 1367(c)(4); (Doc. No. 32 at 7–8). In support, Plaintiff cites to a case from outside the Fifth Circuit, *Ammons v. Ally Fin., Inc.*, 305 F. Supp. 3d 818 (M.D. Tenn., 2018). (Doc. No. 32 at 7–8). In *Ammons*, the plaintiff brought a TCPA claim against her creditor, who allegedly made over 500 calls to the plaintiff to recover a car debt. *Ammons*, 305 F. Supp. 3d at 820. The creditor–defendant, in turn, brought a fraudulent-inducement counterclaim for the plaintiff's allegedly false representation of her ability and willingness to repay the auto loan. *Id.* The court there held that it did not have supplemental jurisdiction because "[t]wo distinct sets of 'operative facts' surround [the plaintiff's] TCPA claim and [the defendant's] state law fraudulent inducement Counterclaim. One set is relevant only to the TCPA claim, the other only to the fraudulent inducement Counterclaim." *Id.* at 823. It also held that, even if it did have supplemental jurisdiction, it would decline to exercise it because of the remedial nature of and public policy behind the TCPA. *Id.* at 824. That is, the TCPA seeks to protect consumer privacy, regardless of their indebtedness. *Id.* Exercising jurisdiction over this counterclaim, therefore, would "discourage[ prospective plaintiffs] from bringing forth meritorious TCPA claims for fear of such counterclaim." *Id.*

7

Here, neither of those concerns are applicable. First, whether Plaintiff provided consent is relevant to both his TCPA claim and to Python's counterclaims. As such, unlike in *Ammons*, there are not two distinct sets of operative facts, but one. Second, the counterclaim here does not concern any debt collection that would frustrate public policy. Instead, it concerns whether Plaintiff provided fraudulent consent in order to abuse federal statutes and the judiciary for his own pecuniary gain. Allowing parties to smoke out such abuse would indeed further, not frustrate, public policy.

Moreover, courts in this Circuit have routinely exercised jurisdiction over similar counterclaims as those in *Ammons. See, e.g., Cherkaoui v. Santander Consumer USA, Inc.*, 32 F. Supp. 3d 811 (S.D. Tex. 2014) (Gilmore, J.) (exercising supplemental jurisdiction over a breach of an auto-loan contract counterclaim in a TCPA case for calls made to collect on the auto-loan contract); *Massey v. Ally Fin., Inc.*, No. CV H-16-3590, 2017 WL 11679901, at *2 (S.D. Tex. Aug. 3, 2017) (Hittner, J.) (same).

Accordingly, the Court has, and will exercise, supplemental jurisdiction over Python's counterclaims and denies Plaintiff's 12(b)(1) Motion to Dismiss.

### B. Failure to State a Claim

Plaintiff also argues that Python's counterclaims should be dismissed for failure to state a claim. More specifically, he asserts two grounds: (1) that the actions that Python plead as instances of detrimental reliance are merely its "general business activities that it spends time on no matter what—not something it did in reliance on Plaintiff's alleged misrepresentation,"[1] (Doc. No. 32 at

---

[1] While, in his motion, Plaintiff only cites the elements of common-law fraud and not fraud by nondisclosure, detrimental reliance is a shared element between those two causes of action.

Common-law fraud requires the following elements:
> (1) [T]he defendant made a material misrepresentation; (2) the defendant knew the representation was false or made the representation recklessly without any knowledge of the truth; (3) the defendant made the representation with the intent that the other party would act on that representation or

9); and (2) that Python's fraud arguments are based on a report from Lead Intelligence, Inc. that Plaintiff contends lacks credibility and reliability, and thus, "cannot be used to prove Plaintiff entered any information," (*Id.* at 9–10).

Python responds procedurally and substantively. Procedurally, it moves to strike the Motion to Dismiss for failing to comply with the Court's rules governing civil procedure. (Doc. No. 35 at 3). Substantially, it does not specifically rebut Plaintiff's claims that ordinary business expenses do not satisfy the detrimental-reliance element; instead, it simply repeats its assertions in its counterclaims that it expended "both employee time and resources to call Plaintiff" and "Plaintiff filed a lawsuit based on these misrepresentations and caused Python to incur attorney's fees and other costs in defending this spurious, manufactured lawsuit." (*Id.* at 5); *see also* (Doc. No. 12 at 18, 19); (Doc. No. 31 at 18, 19). The Court will first address the Motion to Strike and then the substantive arguments.

### i.   Motion to Strike

This Court's rules governing civil procedure imposes the following requirements on parties filing Rule 12(b)(6) motions to dismiss:

> No motion to dismiss for failure to state a claim or counterclaim under FED. R. CIV. P. 12(b)(6) . . . will be considered or decided unless the moving party includes a certification that, before filing the motion, the movant notified the opposing party

---

intended to induce the party's reliance on the representation; and (4) *the plaintiff suffered an injury by actively and justifiably relying on that representation.*
*Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 217 (Tex. 2011) (emphasis added).

Fraud-by-nondisclosure requires the following elements:

> (1) the defendant deliberately failed to disclose material facts; (2) the [counterclaim] defendant had a duty to disclose such facts to the plaintiff; (3) the plaintiff was ignorant of the facts and did not have an equal opportunity to discover them; (4) the defendant intended the plaintiff to act or refrain from acting based on the nondisclosure; and (5) *the plaintiff relied on the non-disclosure, which resulted in injury.*

*Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219–220 (Tex. 2019) (emphasis added).

Thus, for the purposes of this Order, the Court interprets Plaintiff's argument as applying to both common-law fraud and fraud by nondisclosure counterclaims.

> of the issues asserted in the motion and the parties tried but could not agree that the
> pleading deficiency could be cured in any part by a permissible amendment offered
> by the pleading party . . . . *A motion that does not contain the required certification*
> *may be stricken without further notice.*

HANEN, J., R. CIV. P. 7(P) (emphasis added). While the motion does contain a certificate of

conference, it merely certifies that Plaintiff "left messages regarding the above-motion" and, when

Python's counsel "returned the call and requested to review the Motion . . . he confirmed Python

is opposed." (Doc. No. 32 at 13). Moreover, Python contends that "Plaintiff conferred with Python

via telephone only thirty (30) minutes prior to filing the Motion." (Doc. No. 35 at 3).

This vague certificate of conference—devoid of any mention that there was "a permissible

amendment offered by the pleading party"—and the allegedly-perfunctory conference are not what

this Court envisioned when it required the parties to confer. Lack of meaningful conference

between the parties may unduly drain the Court's time and resources, while doing disservice to the

litigants and the public alike.

Additionally, Plaintiff failed to respond to this Motion to Strike. "Failure to respond to a

motion will be taken as a representation of no opposition." S.D. Tex. L.R. 7.4.

Nevertheless, the Court deems it unnecessary to strike Plaintiff's Motion to Dismiss or

deem the Motion to Strike as unopposed, since the Court's ruling herein moots Python's Motion

to Strike. The Court, however, warns the parties to fully comply with the Court's local rules and

Rules of Civil Procedure lest their pleadings be struck or be deemed unopposed.

### ii. Sufficiency of the Report

The Court now turns to the parties' substantive arguments. First, Plaintiff argues that

"Defendants' fraud arguments are based on a report from Lead Intelligence, Inc. . . . [whose]

technology cannot determine whether data was entered by an individual or a bot, and therefore

cannot be used to prove Plaintiff entered any information." (Doc. No. 32 at 9–10). Not only does

10

the report appear nowhere in the record, in a 12(b)(6) motion-to-dismiss context, the Court only considers the sufficiency of the pleadings, not of the evidence. *See Iqbal*, 556 U.S. at 678–79. Thus, Plaintiff's sufficiency-of-the-evidence argument fails.

### iii.   Detrimental Reliance

Second, Plaintiff argues that what Python pleads as instances of detrimental reliance— expending employee time and resources—were its "general business activities that it spends time on no matter what." (Doc. No. 35 at 9). Thus, it contends, that Python has failed to plead detrimental reliance.

In support, Plaintiff quotes *Betz v. Glob. Telesourcing, LLC*, No. 21-cv-1320, 2021 WL 5865384 (D.D.C. Dec. 10, 2021), writing that "[c]onstrued generously, defendant's allegations tend to demonstrate that plaintiff's fraudulent representations were intended to induce reliance by a third party, *i.e.*, the Court, in order to obtain a favorable ruling." (Doc. No. 31 at 9) (citing *Betz*, 2021 WL 5865384, at \*6). That, however, has no bearing on this case because in *Betz*, unlike here, the defendant alleged that "plaintiff continues to misrepresent . . . material facts in his pursuit of this lawsuit, wasting the *Court's* and Defendant's time and resources." *Betz*, 2021 WL 5865384, at \*6 (emphasis added). Thus, the court held, "third parties cannot, standing alone, satisfy the detrimental reliance element required for fraud claims under D.C. law." *Id.* Here, on the other hand, Defendants allege that their own employee time and resources were wasted. (Doc. No. 35 at 5). That is, no third-party reliance issue is presented here, and *Betz* is inapplicable.

Python's cited case is also inapposite. Python cites to *Cunningham v. USA Auto Prot., LLC*, No. 4:20-cv-142, 2021 WL 434243 (E.D. Tex. Jan. 8, 2021), to argue that, because the court there denied a similar 12(b)(6) motion to dismiss as to fraud claims in a TCPA case, so, too, should this Court deny it here. (Doc. No. 35 at 5–6). As Python admits, however, in *Cunningham*, the plaintiff

11

argued only that "defendant could not prove that plaintiff did prompt the calls," (*id.* at 6) (citing *Cunningham*, 2021 WL 434243, at *4), not whether "general business activities" can satisfy the detrimental-reliance element of fraud.

A court in the Western District, however, has addressed this issue and held that employee time and company resources expended in reliance on an alleged misrepresentation suffice to survive a 12(b)(6) motion to dismiss. *Franklin v. Upland Software, Inc.*, No. 1-18-cv-236, 2019 WL 433650, at *4 (W.D. Tex. Feb. 1, 2019), *report and recommendation adopted*, 2019 WL 2745748 (W.D. Tex. Mar. 12, 2019) (Yeakel, J.). In *Frank*, much like here, the plaintiff asserted TCPA claims against the defendant, who then counterclaimed for common-law fraud and fraud by nondisclosure, alleging that the plaintiff solicited the very texts that he claimed were unsolicited. *Id.* at *3. The court there held that the fact that the defendant had to, *inter alia*, "spend both employee time and resources . . . based on [the plaintiff's] representations" were enough to state a claim to relief that is plausible on its face. *Id.* at *4. Plaintiff has not offered any reason why the Court should deviate from *Franklin*. Therefore, the Court holds that Python's expenditure of employee time and resources suffice to survive this 12(b)(6) motion to dismiss.[2]

## C. Texas Citizens Participation Act

Third, Plaintiff argues that Python's counterclaims should be dismissed pursuant to the Texas Citizens Participation Act, codified in Texas Civil Practice and Remedies Code §§ 27.001,

---

[2] Python contends that its litigation costs also satisfy the detrimental-reliance element because Plaintiff's allegedly fraudulent conduct caused it to "incur attorneys' fees and other costs in defending this spurious, manufactured lawsuit." (Doc. No. 35 at 5). True, *Franklin* indicated that Defendant's "incur[ring of] costs associated with what it views as a spurious and setup lawsuit" does satisfy the detrimental-reliance element. *Franklin*, 2019 WL 433650, at *4. That issue, however, is not settled. *Compare id. with In re Okedokun*, 593 B.R. 469, 574 (Bankr. S.D. Tex. 2018), *aff'd and remanded sub nom., Matter of Okedokun*, 968 F.3d 378 (5th Cir. 2020) ("[L]itigation costs cannot be the basis for a detrimental reliance defense."). Nevertheless, because the Court holds at this stage that expenditure of employee time and resources satisfy the detrimental-reliance element, the Court does not reach whether litigation costs do.

*et seq.*[3]  The Texas CPA is Texas' anti-SLAPP (Strategic Litigation Against Public Participation)

statute. Its framework is as follows:

> Under the statutory burden-shifting framework, if a movant for TCPA relief shows "by a preponderance of the evidence" that the action is based on the movant's exercise of the listed rights, a court must dismiss the case. *Id.* at § 27.005(b)(1)–(3). But if the non-movant "establishes by clear and specific evidence a prima facie case for each element of the claim in question," the court may not dismiss. *Id.* at § 27.005(c). The movant then may show "by a preponderance of the evidence each essential element of a valid defense" to the claim and be entitled to dismissal. *Id.* at § 27.005(d). Pleadings and affidavits are permissible for evaluating the dismissal motion and responses. *Id.* at § 27.006(a). Discovery is generally stayed while the motion is pending, *id.* at § 27.003(c), subject to limited relevant discovery for good cause shown. *Id.* at § 27.006(b). Specific time limits are prescribed for the filing of the motion, holding a hearing, and ruling on the motion. *Id.* at § 27.004(a)–(c). Mandatory attorney's fees and costs are awarded to the movant if the case is dismissed, *id.* at § 27.009(a)(1), and sanctions may be imposed to deter the party who brought the legal action. *Id.* at § 27.009(a)(2).

*Klocke v. Watson*, 936 F.3d 240, 244 (5th Cir. 2019).

In *Klocke*, the Fifth Circuit made clear that such a framework does not apply in federal court. It wrote that "[b]ecause the [Texas ]CPA's burden-shifting framework imposes additional requirements beyond those found in Rules 12 and 56 and answers the same questions as those rules, the state law cannot apply in federal court." *Id.* at 245. While Plaintiff cites to *AK FortySeven Recs., Ltd. Co. v. Bahamas Ministry of Tourism*, No. 4:17-cv-3750, 2018 WL 8755881 (S.D. Tex. Sept. 28, 2018), to argue that Texas CPA is applicable in federal court, that case predates *Klocke*. Consequently, the Court follows the Fifth Circuit's reasoning in *Klocke* and denies Plaintiff's motion to dismiss the counterclaims pursuant to the Texas CPA.

---

[3] The Telephone Consumer Protection Act and the Texas Citizens Participation Act both abbreviate to "TCPA." To prevent confusion, the Court refers to the Texas Citizens Participation Act as "Texas CPA" for the purposes of this Order.

## V.    Conclusion

For the foregoing reasons, the Court **DENIES** Python's Motion to Strike as moot, (Doc.

No. 35), and **DENIES** Plaintiff's Motion to Dismiss, (Doc. No. 32).

Signed on this the ___10___ day of December 2024.

Andrew S. Hanen
United States District Judge